UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON SMITH<br>6025 144th Avenue<br>Bristol, Wisconsin 53104<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROSELLE LLA INC.,<br>394 E. Irving Park Road<br>Roselle, Illinois 60172<br><br>　　and<br><br>459 RANDALL CROSSINGS CO.<br>459 S. Randall Road<br>North Aurora, Illinois 60542<br><br>　　and<br><br>BULL DOG ALE HOUSE INC.<br>1021 Fountain View Drive<br>Carol Stream, Illinois 60188,<br><br>　　　　Defendants. | Case No. 16-CV-10346<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW the Plaintiff, Jason Smith, by his counsel, WALCHESKE & LUZI, LLC and COONEY & CONWAY, as and for a claim against the Defendants, alleges and shows to the Court as follows:

1

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because this case involves a federal question under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA").

2. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's state law claims because they are so related in this action within such original jurisdiction that they form part of the same case or controversy.

3. The unlawful employment practices of which Plaintiff complains occurred within the Northern District of Illinois, Eastern Division and, therefore, venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c).

## THE PARTIES

4. Plaintiff, Jason Smith, is an adult resident of the State of Wisconsin residing in Kenosha County, Wisconsin with a post office address of 6025 144th Avenue, Bristol, Wisconsin 53104.

5. Defendant Roselle LLA Inc. is an Illinois corporation doing business at 394 East Irving Park Road, Roselle, Illinois 60172 (hereinafter the "Roselle Bulldog Ale House").

6. According to the Illinois Secretary of State records, Fekrije Limani is President of the Roselle Bulldog Ale House.

7. Upon information and belief, Fekrije Limani is an owner of the Roselle Bulldog Ale House.

8. Defendant 459 Randall Crossings Co. is an Illinois corporation doing business at 452 South Randall Road, North Aurora, Illinois 60542 (hereinafter the "North Aurora Bulldog Ale House").

9. According to the Illinois Secretary of State records, Limani is President of the North Aurora Bulldog Ale House.

10. Upon information and belief, Limani is an owner of the North Aurora Bulldog Ale House.

11. Bull Dog Ale House Inc. is an Illinois corporation doing business at 1021 Fountain View Drive, Carol Stream, Illinois 60188 (hereinafter the "Carol Stream Bulldog Ale House").

12. According to the Illinois Secretary of State records, Limani is President of the Carol Stream Bulldog Ale House.

13. Upon information and belief, Limani is an owner of the Carol Stream Bulldog Ale House.

14. Defendants Roselle Bulldog Ale House, North Aurora Bulldog Ale House, and Carol Stream Bulldog Ale House collectively do business as Bulldog Ale House (hereinafter collectively referred to as "Defendant Bulldog Ale Houses").

15. Defendant Bulldog Ale Houses operate to the public as sports bar and grills and provide food and drink goods and services.

16. Defendant Bulldog Ale Houses are engaged in "commerce" and/or its employees are engaged in "commerce," as that term is defined in 29 U.S.C. § 203(b).

17. During Mr. Smith's employment at Defendant Roselle Bulldog Ale House, its annual dollar volume of sales or business exceeded $500,000.

18. During Mr. Smith's employment at Defendant North Aurora Bulldog Ale House, its annual dollar volume of sales or business exceeded $500,000.

19. During Mr. Smith's employment at Defendant Carol Stream Bulldog Ale House, its annual dollar volume of sales or business exceeded $500,000.

**MR. SMITH'S JOINT EMPLOYMENT AT DEFENDANTS**

20. In or about early November 2015, Defendant Carol Stream Bulldog Ale House hired Mr. Smith into a Bartender position.

21. In or about early November 2015, Defendant Carol Stream Bulldog Ale House hired Mr. Smith into a Bartender position but assigned him to work as a Restaurant Manager.

22. In or about early November 2015, Mr. Smith began employment as a Restaurant Manager at Defendant Carol Stream Bulldog Ale House.

23. In his position as Restaurant Manager, Mr. Smith's job duties and responsibilities included, but were not limited to, monitoring quality control, overseeing guest relations, supervisor labor, and coordinating events for promotions.

24. In his position as Restaurant Manager of Defendant Carol Stream Bulldog Ale House, Mr. Smith reported to Dani (last name unknown), General Manager, who reported to Paul Marrin, Director of Operations of Defendant Roselle Bulldog Ale House, Defendant North Aurora Bulldog Ale House, and Defendant Carol Stream Bulldog Ale House.

25. During Mr. Smith's employment with Defendant Carol Stream Bulldog Ale House, he also performed work for Defendant Roselle Bulldog Ale House and Defendant North Aurora Bulldog Ale House at Dani's direction.

26. Defendant Carol Stream Bulldog Ale House, Defendant Roselle Bulldog Ale House and Defendant North Aurora Bulldog Ale House agreed to share the services of Mr. Smith as a Restaurant Manager for each location.

27. During Mr. Smith's employment at Defendant Roselle Bulldog Ale House, Mr. Smith reported to Pete Krause, General Manager, who reported to Marrin.

28. During Mr. Smith's employment at Defendant North Aurora Bulldog Ale House, Mr. Smith reported to Alex (last name unknown), General Manager, who reported to Marrin.

29. Employees of Defendant Bulldog Ale Houses directly or indirectly reported to Marrin.

30. Mr. Smith's job duties and responsibilities remained the same whether he performed work for Defendant Roselle Bulldog Ale House, Defendant North Aurora Bulldog Ale House, or Defendant Carol Stream Bulldog Ale House.

31. During Mr. Smith's employment with Defendant Roselle Bulldog Ale House and Defendant North Aurora Bulldog Ale House, he performed the same or similar (type of) work for Defendant Roselle Bulldog Ale House or Defendant North Aurora Bulldog Ale House as he did for Defendant Carol Stream Bulldog Ale House.

32. Defendant Roselle Bulldog Ale House, Defendant North Aurora Bulldog Ale House, and Defendant Carol Stream Bulldog Ale House each utilize the website address www.bulldogalehouse.com for commercial advertising.

33. As President of Defendant Bulldog Ale Houses, Limani held and exercised financial control over Defendant Bulldog Ale Houses.

34. During Mr. Smith's employment at Defendant Bulldog Ale Houses, Marrin held a supervisory position over Mr. Smith.

35. Marrin and Limani had the ability to hire and fire employees at Defendant Bulldog Ale Houses, including Mr. Smith.

5

36. Marrin directed and controlled the day-to-day activities and work assignments of Defendant Bulldog Ale Houses' employees, including Mr. Smith's day-to-day activities and work assignments.

37. Marrin created employee schedules and hours of work for Defendant Bulldog Ale Houses' employees, including Mr. Smith's schedule and hours of work.

38. Marrin and Limani directed and controlled the hourly wages of Defendant Bulldog Ale Houses' employees, including Mr. Smith.

39. During Mr. Smith's employment with Defendant Bulldog Ale Houses, Defendant Bulldog Ale Houses shared services, financial resources, employees, customers, operating structure, registered agent, and President.

40. During Mr. Smith's employment with Defendant Carol Stream Bulldog Ale House and when Mr. Smith performed work for Defendant Roselle Bulldog Ale House and/or Defendant North Aurora Bulldog Ale House, Defendant Bulldog Ale Houses were, legally, one entity sharing services, financial resources, employees, customers, operating structure, registered agent, and ownership.

41. During Mr. Smith's employment with Defendant Bulldog Ale Houses, they compensated him on an hourly basis.

42. During Mr. Smith's employment with Defendant Bulldog Ale Houses, they compensated him at a rate of $15.00 per hour.

43. Mr. Smith's last day of employment for Defendant Bulldog Ale Houses was June 9, 2016.

44. During Mr. Smith's employment with Defendant Bulldog Ale Houses, its employees, including Mr. Smith, recorded their hours worked via an electronic time-keeping system.

45. Upon information and belief and during Mr. Smith's employment with Defendant Bulldog Ale Houses, Mr. Smith's recorded hours of work via the electronic time-keeping system accurately reflected his hours worked at Defendant Bulldog Ale Houses.

**DEFENDANTS FAILED TO PROPERLY AND LAWFULLY COMPENSATE MR. SMITH UNDER THE FLSA AND THE ILLINOIS MINIMUM WAGE LAW**

46. During Mr. Smith's employment with Defendant Bulldog Ale Houses and when Mr. Smith performed work for Defendant Bulldog Ale Houses, it compensated him at an hourly rate for all hours worked in a workweek, including those worked in excess of forty (40) hours.

47. During Mr. Smith's employment with Defendant Bulldog Ale Houses and when Mr. Smith performed work for Defendant Bulldog Ale Houses, it did not compensate him with overtime pay at a rate of time and one half for all hours he worked in excess of forty (40) hours each workweek.

48. During Mr. Smith's employment with Defendant Bulldog Ale Houses, they employed him as a full-time (forty (40) hours or more per week) non-exempt employee.

49. During Mr. Smith's employment with Defendant Bulldog Ale Houses, they compensated him on a bi-weekly basis via paycheck.

50. During Mr. Smith's employment with Defendant Bulldog Ale Houses, their workweek was Monday through Sunday.

51. During Mr. Smith's employment with Defendant Bulldog Ale Houses, he frequently worked in excess of forty (40) hours per workweek.

52. For the pay period of November 16, 2015, to November 29, 2015, Mr. Smith's timesheets reflect that he worked 102.55 hours at Defendant Bulldog Ale Houses.

53. For the pay period of November 30, 2015, to December 13, 2015, Mr. Smith's timesheets reflect that he worked 94.87 hours at Defendant Bulldog Ale Houses.

54. For the pay period of December 28, 2015, to January 10, 2016, Mr. Smith's timesheets reflect that he worked 92.48 hours at Defendant Bulldog Ale Houses.

55. For the pay period of January 11, 2016, to January 24, 2016, Mr. Smith's timesheets reflect that he worked 90.45 hours at Defendant Bulldog Ale Houses.

56. For the pay period of January 25, 2016, to February 7, 2016, Mr. Smith's timesheets reflect that he worked 105.99 hours at Defendant Bulldog Ale Houses.

57. For the pay period of February 8, 2016, to February 21, 2016, Mr. Smith's timesheets reflect that he worked 89.92 hours at Defendant Bulldog Ale Houses.

58. For the pay period of February 22, 2016, to March 6, 2016, Mr. Smith's timesheets reflect that he worked 96.98 hours at Defendant Bulldog Ale Houses.

59. For the pay period of March 7, 2016, to March 20, 2016, Mr. Smith's timesheets reflect that he worked 96.52 hours at Defendant Bulldog Ale Houses.

60. During Mr. Smith's employment with Defendant Bulldog Ale Houses, Mr. Smith worked a total of approximately 129.76 hours in excess of forty (40) hours each workweek at Defendant Bulldog Ale Houses for which he was not properly or lawfully compensated.

61. As a result of not properly or lawfully compensating Mr. Smith at the overtime rate of time and one half for each hour worked in excess of forty (40) hours each workweek from November 16, 2015, to March 20, 2016, Defendant Bulldog Ale Houses owe Mr. Smith approximately $973.20 of unpaid wages at an overtime rate of pay (half-time) for work it

suffered or permitted him to perform during his employment and for which he was not properly compensated.

62. In or about early December 2015, Mr. Smith told Dani that he worked hours in excess of forty (40) hours each workweek during his first two weeks of employment, that he was supposed to be paid overtime for hours worked in excess of forty (40) hours each workweek, and that Defendant Carol Stream Bulldog Ale House had paid Mr. Smith overtime compensation on his previous paycheck, or words to that effect. In response to Mr. Smith, Dani told Mr. Smith that he "had to see," or words to that effect.

63. Within days of the discussion described in paragraph 62 above, Dani told Mr. Smith, "No, we're not going to pay overtime," or words to that effect.

64. On or about June 9, 2016, Marrin received the materials attached hereto as **Exhibit A** from Mr. Smith in his (Marrin's) office.

65. On or about June 12, 2016, Marrin received a text message from Mr. Smith regarding Mr. Smith's earned overtime compensation.

66. In response to Mr. Smith's June 12, 2016 text message described in paragraph 65, Marrin responded that he would "look into it," or words to that effect.

67. On or about June 18, 2016, Marrin received a text message from Mr. Smith regarding Mr. Smith's earned overtime compensation.

68. In response to Mr. Smith's June 18, 2016 text message described in paragraph 67, Marrin responded that he needed more time to address Mr. Smith's concerns, or words to that effect.

69. On or about June 25, 2016, Marrin received a text message from Mr. Smith regarding Mr. Smith's earned overtime compensation.

70. Marrin did not respond to Mr. Smith's text message of June 25, 2016.

## FIRST CAUSE OF ACTION – FLSA OVERTIME PAY VIOLATIONS

71. Mr. Smith re-alleges and incorporates paragraphs 1-70 of this Complaint by reference.

72. Section 207(a)(1) of the FLSA regulates, among other things, the payment of an overtime premium by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.

73. During Mr. Smith's employment with Defendant Carol Stream Bulldog Ale House, it was an "employer" as that term is defined under the FLSA.

74. During Mr. Smith's employment with Defendant Roselle Bulldog Ale House, it was an "employer" as that term is defined under the FLSA.

75. During Mr. Smith's employment with Defendant North Aurora Bulldog Ale House, it was an "employer" as that term is defined under the FLSA.

76. During Mr. Smith's employment with Defendant Bulldog Ale Houses, they were joint employers of Mr. Smith under the FLSA.

77. Defendant Bulldog Ale Houses were and are subject to the overtime pay requirements of the FLSA because Defendant Bulldog Ale Houses are enterprises engaged in commerce and/or its employees are engaged in commerce, as defined in Section 203(b) of the FLSA.

78. At all times material herein, Mr. Smith was entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 et seq.

79. At all times material herein, Mr. Smith was an employee of Defendant Bulldog Ale Houses as provided under the FLSA.

80. At all times material herein, Mr. Smith performed work for and received compensation for work performed from Defendant Bulldog Ale Houses.

81. At all times material herein, Defendant Bulldog Ale Houses employed Mr. Smith as provided under the FLSA.

82. Defendant Bulldog Ale Houses violated the FLSA by not compensating Mr. Smith with overtime premium pay of time and one half for each hour he worked in excess of forty (40) hours each workweek.

83. During Mr. Smith's employment with Defendant Bulldog Ale Houses and when he performed work for Defendant Bulldog Ale Houses, Defendant Bulldog Ale Houses intentionally violated 29 U.S.C. § 215(a) by failing to compensate Mr. Smith with overtime pay at a rate of time and one half for each hour he worked in excess of forty (40) hours each workweek.

84. Defendant Bulldog Ale Houses' failure to properly and legally compensate Mr. Smith for all compensable work time was willfully perpetrated. Defendant Bulldog Ale Houses have neither acted in good faith nor with reasonable grounds to believe their actions and omissions were not a violation of the FLSA, and as a result thereof, Mr. Smith is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime premium pay described above pursuant to Section 216(b) of the FLSA. Alternatively, should the Court find that Defendants did not act willfully in failing to pay overtime premium pay wages, Mr. Smith is entitled to an award of pre-judgment interest at the applicable legal rate.

85. As a result of the aforesaid willful violations of the FLSA's provisions, overtime compensation has been unlawfully withheld from Mr. Smith by Defendant Bulldog Ale Houses.

86. Mr. Smith is entitled to damages equal to the mandated overtime premium pay within the three (3) years preceding the date of filing of this Complaint, plus periods of equitable tolling because Defendant Bulldog Ale Houses acted willfully and knew or showed reckless disregard of whether their conduct was prohibited by the FLSA.

87. Pursuant to the FLSA, 29 U.S.C. § 216(b), successful Plaintiffs are entitled to reimbursement of the costs and attorneys' fees expended in successfully prosecuting an action for unpaid wages and overtime wages.

## SECOND CAUSE OF ACTION – ILLINOIS STATE LAW VIOLATIONS

88. Mr. Smith re-alleges and incorporates paragraphs 1-87 of this Complaint by reference.

89. At all relevant times, Mr. Smith was an employee of Defendant Bulldog Ale Houses within the meaning of 820 ILCS 105/3(d).

90. At all relevant times, Defendant Bulldog Ale Houses were employers of Mr. Smith within the meaning of 820 ILCS 105/3(c).

91. Defendant Bulldog Ale Houses willfully violated the Illinois Minimum Wage Law ("IMWL") by failing to properly compensate Mr. Smith for each hour he worked.

92. Defendant Bulldog Ale Houses willfully violated the IMWL by failing to compensate Mr. Smith at a rate of time and one half for each hour of overtime he worked in excess of forty (40) hours in a workweek.

93. At all times material herein, Mr. Smith was compensated on an hourly basis and thus did not meet or satisfy the exemption requirements under 820 ILCS 105/4a(2).

94. Pursuant to 820 ILCS 105/12(a), Mr. Smith is entitled to recover his costs, reasonable attorneys' fees, and punitive damages in the amount of two percent (2%) per month of the amount of under payments.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Order Defendant Bulldog Ale Houses to make Plaintiff whole by reimbursing him for unpaid overtime wages for all time spent performing compensable work for which he was not properly and legally paid at the rate of time and one half as provided under the FLSA and IMWL.

B. Grant to Plaintiff his attorneys' fees, costs, and disbursements as provided by statute;

C. Grant to Plaintiff punitive damages of two percent per month against Defendant Bulldog Ale Houses;

D. Grant to Plaintiff liquidated damages against Defendant Bulldog Ale Houses; and

E. Grant to Plaintiff whatever other relief this Court deems necessary and proper.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES.**

Dated this 4th day of November, 2016.

WALCHESKE & LUZI, LLC
Counsel for Plaintiff

*s/ Jesse R. Dill*
James A. Walcheske, WI SBN 1065635
Jesse R. Dill, WI SBN 1061704
15850 W. Bluemound Road, Suite 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
E-mail: jwalcheske@walcheskeluzi.com
E-mail: jdill@walcheskeluzi.com

COONEY & CONWAY

James T. Newman, IL SBN 3121939
120 N. Lasalle Street, Suite 3000
Chicago, Illinois 60602
Phone: (312) 236-6166
Fax: (312) 236-3029
E-mail: jnewman@cooneyconway.com